**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 19a0461n.06

Case No. 18-5924

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| ANTWON BROOME, | ) | TENNESSEE |
| | ) | |
| Defendant-Appellant. | ) | |

**FILED**
Aug 30, 2019
DEBORAH S. HUNT, Clerk

BEFORE:  COLE, Chief Judge; SILER and CLAY, Circuit Judges.

**SILER**, Circuit Judge.  Antwon Broome appeals his within-Guidelines range sentence, arguing that it is procedurally and substantively unreasonable.  We AFFIRM.

I.

After discovering contraband—including fentanyl, methamphetamine, and two loaded firearms—at Broome's residence, the Government charged Broome with: (1) possession with intent to distribute heroin, (2) possession with intent to distribute methamphetamine, and (3) being a felon in possession of a firearm.

Broome pleaded guilty to possessing methamphetamine with intent to distribute, and the Government dropped the remaining charges.

The presentence report ("PSR") calculated Broome's base offense level as 24, adjusted upwards two levels (to 26) because he possessed firearms. Broome's prior convictions for, among other things, attempted first-degree murder, aggravated robbery, and drug trafficking, qualified him as a career offender under USSG § 4B1.1, resulting in an offense level of 34. He also received a three-level decrease for acceptance of responsibility, resulting in a final offense level of 31. His criminal history placed him in criminal history category IV, so his Guidelines sentencing range was 188 to 235 months' imprisonment.

Broome filed a motion for a downward variance. He claimed that the career offender enhancement resulted in an unfair sentence and asked that the district court sentence him to 92 to 115 months' imprisonment—the range he *would have* received without the career offender enhancement.

The Government opposed the variance, arguing that each of the 18 U.S.C. § 3553(a) factors—which courts consider in sentencing offenders—supported the PSR's recommended sentence. Pertinently, it argued that Broome's criminal history suggested that he was likely to reoffend; thus, the Government reasoned, the enhancement should be applied to "protect the public from further crimes," *see* 18 U.S.C. § 3553(a)(2)(C). In so arguing, the Government relied on a report issued by the United States Sentencing Commission (the "Sentencing Commission") which concluded that "[c]areer offenders who have committed a violent instant offense or a violent prior offense generally . . . recidivate at a higher rate than [other] career offenders, and are more likely to commit another violent offense in the future." (*Id.* (quoting *Report to Congress: Career Offender Sentencing Enhancements* (2016), https://www.ussc.gov/research/congressional-reports/2016- report-congress-career-offender-enhancements [hereinafter *Career Offender Report*])). Further, the Government claimed that a within-Guidelines sentence would "avoid

unwarranted sentence disparities" between Broome and similarly situated offenders. It cited no evidence supporting this proposition.

At sentencing, the district court accepted the PSR's Guidelines calculation without objection and then heard Broome's counsel on his motion for a variance. During argument, counsel primarily reiterated the arguments raised in the motion, but also noted that "the trend in application of the career offender [enhancement is for] courts . . . to grant variances . . . below the career offender guideline range." Counsel also explained that "all the research indicates that a longer sentence does not create a higher deterrent effect . . . . So a difference of five years here . . . does not gain any additional deterrent impact; it's just punishment."

The district court denied Broome's motion, considered the 18 U.S.C. § 3553(a) factors, and imposed a sentence of 190 months' imprisonment—two months above the low end of Broome's Guidelines range. The court reasoned that the nature and circumstances of Broome's offense, along with his prolific criminal history, justified a within-Guidelines sentence.

II.

Broome claims that his sentence is procedurally and substantively unreasonable because the district court relied on "clearly erroneous facts" when it found that a within-Guidelines sentence was necessary to: (1) avoid unwarranted disparity between Broome and similarly-situated offenders, and (2) protect the public.

The border between procedural and substantive reasonableness can be blurry, and the analysis often overlaps. *United States v. Herrera-Zuniga*, 571 F.3d 568, 579 (6th Cir. 2009); *see also United States v. Adams*, 873 F.3d 512, 520 (6th Cir. 2017) (explaining that "[t]he determination of what falls in the procedural versus substantive prong of [the sentencing] analysis, however, 'is not fully settled within our [c]ircuit" (internal quotation marks and citation omitted)).

Here, the overlap is prevalent: Broome bases both of his unreasonableness challenges on the same argument, i.e., that the district court relied on erroneous information in applying the career offender enhancement.

Recently, however, we have concluded that whether a district court improperly relied on erroneous information or assumptions in fashioning a sentence relates to the procedural reasonableness of the sentence. *United States v. Parrish*, 915 F.3d 1043, 1047 (6th Cir. 2019). Thus, though Broome packages his argument as a challenge to *both* the procedural and substantive reasonableness of his sentence, Broome truly only contests the procedural aspect.

A.      **Broome's Sentence is Procedurally Reasonable**

We review the procedural reasonableness of a sentence for abuse of discretion. *Gall v. United States*, 552 U.S. 38, 51 (2007). A defendant may establish that his sentence is procedurally unreasonable by demonstrating that, in determining the sentence, the district court relied on "clearly erroneous facts," *id.*, and that those clearly erroneous facts "actually served as the basis for the sentence . . . ." *Adams*, 873 F.3d at 517 (quoting *United States v. Robinson*, 898 F.2d 1111, 1116 (6th Cir. 1990)).

Broome claims that the district court relied on erroneous information when it found that a within-Guidelines sentence was necessary to: (1) avoid unwarranted disparity between Broome and similarly-situated offenders, and (2) protect the public. He bases both arguments on the fact that the Government, citing the Career Offender Report, told the district court that offenders like Broome—who have "violent career offender predicates"—"are the people that the career offender guidelines should definitely be used against," when, in fact, the report suggests otherwise. We address each argument separately.

### 1. *Unwarranted Disparity*

Broome first argues that the Career Offender Report contains empirical data demonstrating that "mixed category" career offenders (i.e., career offenders like Broome who have committed *both* drug-trafficking *and* violent crimes) regularly receive below-Guidelines sentences. He notes that the report claims that mixed-category offenders only receive a within-Guidelines sentence 23.5% of the time. Thus, Broome maintains, "by [subjecting him to] a within-guideline sentence," the district court *created* a sentencing disparity.

We disagree. As an initial matter, as the Seventh Circuit has explained "it is pointless for a defendant whose sentence . . . is within the Guidelines to" raise an unwarranted disparity argument. *See United States v. Shrake*, 515 F.3d 743, 748 (7th Cir. 2008). Put differently, "the guidelines are designed to avoid unwarranted disparities—[thus,] whatever else may be wrong with a within-guidelines sentence, it is not likely to be an unwarranted disparity." *United States v. Wimbley*, 349 F. App'x 54, 58 (6th Cir. 2009) (citation omitted); *see United States v. Swafford*, 639 F.3d 265, 270 (6th Cir. 2011) (noting that an "unwarranted disparity" argument is an "unconventional ground for challenging a within-guidelines sentence" (emphasis omitted)).

And in any event, Broome's argument lacks merit. Nothing in the record suggests that the sentencing judge *relied* on *false* information—whether contained in the report, the Government's arguments, or elsewhere. To be sure, the Government argued that Broome qualifies as a career offender based on his criminal history—which is true. It did not, however, tell the judge that career offenders like Broome receive a within-Guidelines sentence more often than not. Further, the record does not suggest that the district court relied on any of the Government's statements or otherwise considered them as "important factors" in fashioning Broome' sentence. The district judge did not even reference the Government's position in finding that a within-Guidelines range

sentence would not create a disparity. *Cf. Adams*, 873 F.3d at 518-19 (reasoning that the district court relied on false information presented by Government when the district court explicitly referenced the information as a justification for the sentence imposed). Rather, the district court reasoned that a within-Guidelines sentence would not create a disparity because, as noted, "the [G]uidelines are designed to avoid unwarranted disparities." *Wimbley*, 349 F. App'x at 58 (citation omitted).

Moreover, the Career Offender Report does not help Broome as much as he contends. While the report says that mixed-category offenders like Broome receive below-Guidelines sentences 23.5% of the time, it also states that 73.5% of those downward variances are based on Government-sponsored motions.[1] (*Career Offender Report* at 35). So, according to the report, most mixed-category offenders receive a variance only after providing the Government with substantial assistance or otherwise demonstrating to the prosecution that the Guidelines range was inappropriate. Broome, however, did not provide substantial assistance and is therefore not "similarly situated" to the offenders who did. *United States v. Mason*, 410 F. App'x 881, 886 (6th Cir. 2010) (noting that sentencing disparities between offenders who provide substantial assistance and offenders who do not are warranted). Thus, Broome is dissimilar from the group of offenders able to obtain a Government-sponsored downward variance. *See id.*

Finally, Broome's reliance on *United States v. Miller*, 601 F.3d 734 (7th Cir. 2010), is misplaced. There, unlike here, the district court sentenced the defendant (a child sex offender) to a sentence that was 50% higher than his Guidelines range. *Id.* at 739. In justifying the departure, the district court stated: "[t]he recidivism rate of child sexual abusers is . . . massive. Nothing

---

[1] The report indicates that mixed-category career offenders only receive non-Government-sponsored downward variances 26.5% of the time. (*Career Offender Report* at 35).

seems to work." *Id.* at 737 (alterations in original). On appeal, the defendant produced studies showing that the sex offenders do, in fact, rehabilitate. The circuit court reversed, finding that the district judge's blanket statement about the impossibility of rehabilitation may not be true. *Id.* at 740. Here, unlike in *Miller*, Broome received a within-Guidelines range sentence. Moreover, the district court did not explicitly voice any personal ill-informed beliefs.

### 2. *Protection to the Public*

Next, Broome claims that the district court erred insofar as it concluded that a within-Guidelines sentence would reduce his likelihood of recidivism—and therefore offer greater protection to the public than would a below-Guidelines sentence—because studies show that a higher sentence does not better advance the purpose of protecting the public. In support, he explains that mixed-category career offenders sentenced pursuant to the career offender enhancement reoffend at a rate of 69.4%, whereas defendants who *are not* career offenders but *nonetheless* have a criminal history sufficient to place them in category IV reoffend 77.1% of the time. Accordingly, Broome maintains—because he was placed in criminal history category IV (regardless of the career offender enhancement)—the likelihood that he will reoffend is around 70%, regardless whether he is sentenced as a career offender.

We reject Broome's position. Here, again, nothing in the record suggests that the district court relied on erroneous information in fashioning Broome's sentence. The Career Offender Report states: "Career offenders who have committed a violent instant offense or a violent prior offense generally have a more serious and extensive criminal history, recidivate at a higher rate than drug trafficking only career offenders, and are more likely to commit another violent offense in the future." (*Career Offender Report* at 2-3). Thus, assuming the court relied on this information, or otherwise assumed that Broome was likely to reoffend due to his criminal history

and therefore should receive a within-Guidelines range sentence, such information or assumption was *true*. No false information was considered, and Broome's argument fails.

**B.      Broome's Sentence is Substantively Reasonable**

"The essence of a substantive-reasonableness claim is whether the length of the sentence is 'greater than necessary' to achieve the sentencing goals set forth in 18 U.S.C. § 3553(a)." *United States v. Tristan-Madrigal*, 601 F.3d 629, 632-33 (6th Cir. 2010). Broome received a within-Guidelines range sentence (and concedes that the district court calculated that range correctly), so the court may presume that his sentence is substantively reasonable. *Adams*, 873 F.3d at 520.

Broome's substantive reasonableness argument—which simply mirrors his procedural unreasonableness one—fails. As noted, a defendant contesting the information or assumptions a district judge relied on in fashioning a sentence raises a procedural challenge, not a substantive one. *Parrish*, 915 F.3d at 1047. And, as discussed above, the record does not substantiate Broome's claims.

**AFFIRMED**.